UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN T. HILL,<br><br>        Plaintiff,<br><br>   v.<br><br>CALIFORNIA DEPT. CORRECTIONS, et. al.,<br><br>        Defendants.<br>_____/ | CV F 00 5103 REC SMS P<br><br>FINDINGS AND RECOMMENDATIONS REGARDING MOTION FOR SUMMARY JUDGMENT (Doc. 135) |

**A. PROCEDURAL HISTORY**

    Brian T. Hill ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's Third Amended Complaint, filed April 16, 2001, against Defendants C. Terhune, G. Galaza, Dr. Hirokawa, and Dr. B. Yee for denial of adequate medical care, denial of adequate mental health care, inhumane living conditions resulting in cruel and unusual punishment, violation of the free exercise clause, denial of First Amendment right to access to the telephone, and denial of First Amendment right to receive publisher books and magazines.

    On April 4, 2005, Defendants moved for Summary Judgment. The Court issued Findings and Recommendations to deny the Motion in part and grant it in part. On August 19, 2005, the

District Court adopted the Findings and Recommendations and dismissed all claims except the First Amendment claim regarding telephone access and possession of catalogs against Defendants Terhune and Galaza.  The Court also granted Defendants an additional thirty days to file a second Motion for Summary Judgment as there had been some misunderstanding about the claims at issue in the Third Amended Complaint.

On November 7, 2005, Defendants moved for Summary Judgment on the remaining first Amendment claims.  Plaintiff filed an Opposition on November 21, 2005.

**B. PLAINTIFF'S ALLEGATIONS**

In the Third Amended Complaint, Plaintiff alleges that his First Amendment rights were violated by telephone and catalog restrictions.  Plaintiff names California Department of Corrections Rehabilitation Director Terhune and Warden Galaza as Defendants.

**C. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district

court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (*per curiam*). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the

3

1  inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D.
2  Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

3  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (*citation omitted*).

### D. STATEMENT OF UNDISPUTED FACTS[1]

*Telephone Restrictions*

1. At all times relevant to this action, Plaintiff was an inmate in the custody of California Department of Corrections and Rehabilitation ("CDCR") and was confined at Corcoran State Prison ("CSP") at the filing of the Complaint.

2. At all times relevant to this action, Defendant Terhune was the Director of the CDCR.

3. Unlike inmates in the General Population, inmates in Administrative Segregation ("AdSeg") are not allowed leisure telephone privileges. Inmates are allowed attorney telephone calls and family telephones calls where there exists a serious family emergency or death involving an immediate family member.

4. AdSeg provides temporary segregation for inmates pending an investigation into allegations of misconduct, evaluation of the inmates housing and custody needs, and disciplinary action. Inmates are removed from the general population and placed in AdSeg when they have been accused of serious misconduct and pending an investigation and disciplinary action. Inmates may also be placed or retained in

---

[1] Plaintiff neither admitted or denied the facts set forth by Defendants as undisputed nor filed a separate Statement of Undisputed facts. Local Rule 56-260(b). Therefore, the Court compiled the statement of undisputed facts from Defendants' Statement of Undisputed Facts and Plaintiff's verified Third mended Complaint and Opposition. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (verified complaints and oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge). Because Plaintiff neither submitted his own statement of disputed facts nor addressed Defendants' Statement of Undisputed Facts, the Court accepts Defendants' version of the facts where Plaintiff's verified Amended Complaint and Opposition are not contradictory.

|   |   |   |
|---|---|---|
| 1 |  | AdSeg pending bed availability in the General Population. |
| 2 | 5. | Inmates are also sometimes retained in AdSeg pending transfer to a Security Housing Unit ("SHU") to serve a SHU term.  An inmate whose conduct endangers the safety of others or the safety of the institution shall be housed in a SHU.  Validated gang members are one example of inmates who are housed in a SHU. |
| 7 | 6. | Inmates are segregated for the duration of their AdSeg confinement.  This is to preserve the integrity of any ongoing investigation as well as the safety of staff and other inmates.  Equally important is the fact that most of the inmates are in AdSeg pending serious disciplinary charges such as assault on staff, assault on another inmate, inciting a riot, and drug trafficking, to name a few.  Accordingly, segregation serves the purpose of maintaining the safety and security of the institution, staff, and other inmates. |
| 14 | 7. | Pursuant to policies and procedures, inmates in AdSeg are confined in their cells.  Anytime an inmate has to come out of his cell, he is escorted in mechanical restraints by two custody staff members under the watch of the control booth officer.  Inmate movement in AdSeg is highly restricted because of the security concerns involving those inmates housed in AdSeg. |
| 19 | 8. | Inmates in AdSeg are not allowed to make telephone calls for a number of reasons.  Telephone privileges are suspended while an inmate is in AdSeg mainly due to the number of staff it would require to allow the inmates access to a telephone. There are two AdSeg Units in Facility 3A: ASU-3A03 and ASU-3A04.  There is also a stand-alone AdSeg Unit known as ASU-1.  Each unit houses approximately 200 inmates.  Due to the violent nature of the inmates in AdSeg, there is also a higher staff to inmate ratio than there is in the General Population. |
| 26 | 9. | Inmates are, however, allowed attorney telephone calls.  Such calls are arranged by the inmate's attorney through the Litigation Office at Corcoran State Prison.  Once the Litigation Office verifies that the attorney has legitimate legal business |

to address with the inmate-client, the Litigation Office notifies the AdSeg staff with directions to accommodate the telephone call. The inmate is escorted in mechanical restraints by two staff members under the watch of the control booth officer to a Counselor or Supervisor's office. One staff member dials the telephone and puts it on a speaker phone. Once the call is connected, staff leave the room and stand guard outside the room. The inmate remains in mechanical restraints the entire time.

10. Inmates are also allowed telephone calls in cases where there is a serious family emergency or death of an immediate family member. In such cases, a family member generally contacts the institution requesting notification to the inmate of a family members demise or serious injury. The institution's Chaplain or the designated supervisor would then notify the inmate of the notification. The counselor of record would verify the information provided and submit the findings to the Facility Captain requesting authorization for the inmate to make a phone call. The telephone call is placed in the same manner as described in paragraph 9 above. The only difference is that staff remain in the room during the telephone call since it is not confidential attorney-client communication.

11. While inmates lose telephone privileges when confined in AdSeg, they retain mail and visitation privileges.

***Operational Procedure 205 Regarding Non-Subscription Bulk Mail or Catalogs***

12. On February 1, 2005, the Ninth Circuit Court of Appeals ruled that the Washington Department of Corrections' ban on inmates' receipt of non-subscription bulk mail and catalogs violated the First Amendment. The Court also ruled that Department employees were entitled to qualified immunity regarding the Plaintiff's First Amendment claim. Prison Legal News v. Lehman, 397 F.3d 692 (9th Cir. 2005.)

13. In response to the Prison Legal News decision, on April 5, 2005, the CDCR issued a memorandum directing prison officials to process and permit incoming

1    non-subscription bulk mail and catalogs that are addressed to individual inmates.
2    The memorandum also advised prison officials that Cal.Code Regs., tit. 15,
3    § 3006(c)(11) would be revised to allow non-subscription bulk mail and catalogs
4    that are addressed to an individual inmate.

14. Corcoran State Prison staff are no longer enforcing the section in Operational Procedure 205 which prohibits inmates from receiving non-subscription bulk mail or catalogs. Staff have been directed to process and permit incoming non-subscription bulk mail and catalogs that are addressed to individual inmates.

**E. ANALYSIS**

*1. Telephone Restrictions*

Plaintiff alleges that he was denied use of the telephone for personal, legal and emergency calls due to his confinement in administrative segregation. Plaintiff alleges that the telephone restrictions imposed on him while confined in administrative segregation violate his First Amendment Rights and serve no penological interest. (Third Amended Complaint at 19.)

The Ninth Circuit has held that "[p]risoners have a First Amendment right to telephone access, subject to reasonable security limitations." Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir.1996) (*citing* Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir.1986)); Carlo v. City of Chino, 105 F.3d 493, 496 (9th Cir.1997); Henry v. County of Shasta, 132 F.3d 512, 519 (9th Cir.1997).

Defendants present evidence in the form of an affidavit of J.R. Andrews, Facility Captain assigned to Facility 3A. (Declaration of J.R. Andrews [hereinafter "Andrews Decl."] at 1.) The declaration provides that inmates in AdSeg are not allowed leisure telephone privileges due to security concerns. Id. Inmates are most often segregated from other inmates pending disciplinary charges such as assaults on staff or other inmates, inciting riots, and/or drug trafficking. Segregation serves the purpose of maintaining the safety and security of the institution, staff, other inmates or the inmate himself. Id. Due to the violent nature of the inmates in AdSeg, the ratio of guards to inmates is greater than in General Population. The undisputed facts show that inmates are allowed contact with family members in cases of emergency and with an inmate's

attorney provided the contact is made pursuant to legitimate legal business. Id. The restrictions imposed are that arrangements for contact must be made in advance and through the litigation office. Id.

The Court finds that Defendants have met their initial burden of informing the Court of the basis for their Motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank v. Cities Service. Co., 391 U.S. 253, 289 (1968); Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

Here, Plaintiff provides only a denial that the restrictions imposed are pursuant to a legitimate penological but he provides no evidence to support his contention. As noted above, Plaintiff may not rely solely on the allegations or denials in his pleadings but must tender evidence. Plaintiff provides solely his conclusory statements that the restrictions are oppressive or unreasonable. Accordingly, the Court finds Defendants are entitled to summary judgment on the First Amendment telephone access claim.

### 2. Right to Possess Publisher Catalogs

Plaintiff also alleges that his First Amendment Rights were violated because prison policy precludes him from having catalogs which are necessary to order books and magazines.

**a. First Amendment Right**

In Prison Legal News v. Lehman, 397 F.3d 692 (9th Cir. 2005), the Ninth Circuit held that a CDCR ban on an inmate's receipt of non-subscription bulk mail and catalogs violated the First Amendment. Prison Legal News v. Lehman, 397 F.3d 692 (9th Cir. 2005). In response to this decision, the California Department of Corrections and Rehabilitation issued a memorandum

directing all institutions to permit incoming non-subscription bulk mail and catalogs that were addressed to individual inmates. (Motion at 9.) This order was to take effect April 5, 2005, during the pendency of this action. Id. As a result, Corcoran State Prison, where Plaintiff was confined at the time the events at issue arose, no longer enforced the operational procedure which prohibited inmates from receiving non-subscription catalogs. Defendants argue, however, that they are entitled to qualified immunity as to this issue.

### b. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id. In determining whether the right was clearly established, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (*internal quotations and citation omitted*). In resolving these issues, the Court must view the evidence in the light most favorable to Plaintiff and resolve all material factual disputes in favor of Plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

As discussed above, Defendants do not dispute that the ban on non-subscription bulk mail and catalogs is unconstitutional as a matter of law. (Motion at 10.) Defendants argue, however, that they are entitled to qualified immunity because the rights asserted were not clearly established at the time. Id.

After determining that the ban on non-subscription bulk mail and catalogs was not rationally related to a legitimate penological interest and was therefore unconstitutional, the

Ninth Circuit concluded that prison officials were entitled to qualified immunity because they could have easily and reasonably understood the Court's holding in Morrison v. Hall, 261 F.3d 896 (9th Cir. 2001) concerning a similar ban on subscription for-profit bulk mail, to allow a ban on non-subscription bulk mail and catalogs. Prison Legal News v. Lehman, 397 F.3d 692, 702 (9th Cir. 2005). The Court found the following paragraph from Morrison v. Hall, 261 F.3d 896 (9th Cir. 2001) sufficient to show how prison officials could have thought a ban on non-subscription bulk mail and catalogs was constitutional:

> Moreover, prisons can and have adopted policies permitting prisoners to receive for-profit, commercial publications, while at the same time, prohibiting prisoners from receiving unsolicited junk mail. For example, the California Department of Corrections ("CDC") adopted a regulation that prohibits prisoners from 'possessing ... catalogs, advertisements, brochures, and materials whose primary purpose is to sell a product(s) or service(s) and when taken as a whole, lacks serious literary, artistic, political, educational, or scientific value.' 15 Cal.Admin. Code § 30006(c)(11). Unlike the Oregon regulation, the CDC regulation is specifically tailored to permit inmates to receive for-profit, subscription publications such as The New York Times, while at the same time prohibiting the receipt of unsolicited junk mail.

Prison Legal News, 397 F.3d at 702. The Court held that prison officials could have read the above paragraph and "reasonably (though incorrectly, as it turns out) believed that like the CDC[R], they could ban catalogs and non-subscription bulk mail while allowing inmates to receive non-profit and for-profit subscription bulk mail." Id. Defendants contend that the regulation cited by Prison Legal News is the very regulation on which the challenged Operational Procedure in this case is based. In addition, Defendants provide evidence that neither the regulation or operational procedure are being enforced. (Exh. A, Declaration of B. Silva [hereinafter "Silva Decl."].)

In Opposition, Plaintiff argues that Defendants are not entitled to qualified immunity because the fact that the policy prohibiting such catalogs has been abolished is evidence that his rights were violated. (Opposition at 5.) However, whether the Defendants violated the constitution is only one part of the test for qualified immunity. As noted above, Defendants concede that a constitutional violation occurred but argue that the actions of the officials are immune from judgment because the law was not clearly established at the time the violation

10

occurred. Other than his conclusory statement, however, Plaintiff provides neither argument or evidence to the contrary. Although the instant action was filed on December 20, 1999, prior to the Ninth Circuit's issuance of Morrison v. Hall, 261 F.3d 896 (9th Cir. 2001), the Complaint is unclear as to the date the alleged deprivation of catalogs occurred. Even assuming that Plaintiff's claim arose after the Ninth Circuit issued Morrison, the Court's finding that prison officials could have and did reasonably read Morrison to allow a ban on non-subscription bulk mail and catalogs would support a finding of immunity in this case. Accordingly, Defendants are entitled to judgment as a matter of law based on qualified immunity.

### c. Claim for Injunctive Relief

Defendants argue that Plaintiff's claim for injunctive relief is moot in light of the CDC's April 5, 2005, directive that the challenged regulation no longer be enforced. (Motion at 11.)

A federal court has no authority to issue opinions upon moot issues. See County of Los Angeles v. Davis, 440 U.S. 625 (1979); Aguirre v. S.S. Sohio Intrepid, 801 F.2d 1185 (9th Cir. 1986). When an inmate seeks injunctive or declaratory relief concerning the prison where he is incarcerated, his claims for such relief become moot when he is no longer subjected to those conditions. See Weinstein v. Bradford, 423 U.S. 147, 148-49 (1975) (finding prisoner's due process claim to be moot once he obtained a full release from prison supervision); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (finding prisoner's suit for library access to be moot upon his transfer to another prison); Chronicle Publishing Co. v. Rison, 962 F.2d 959, 960 (9th Cir. 1992) (finding a prisoner's suit challenging prison's publication regulations to be moot upon prisoner's release on parole). An exception to the mootness doctrine exists if the case is "capable of repetition, yet evading review." Weinstein v. Bradford, 423 U.S. at 148.

According to the evidence provided by Defendants, the CDC issued a Memorandum April 5, 2005, directing all California institutions to allow incoming non-subscription bulk mail and catalogs pursuant to the Ninth Circuit's ruling on the issue. (Exh. A, Silva Decl.). The Memo further indicates that Section 3006(c)(11) of the California Code of Regulations would be revised to accommodate the Court's holding. Id. Plaintiff concedes in his Opposition that the policy of prohibiting inmates from receiving and possessing catalogs has been "abolished."

(Opposition at 5-6.) In light of these facts, the Court finds Plaintiff's claim for injunctive relief moot.

**F. CONCLUSION AND RECOMMENDATION**

The Court HEREBY RECOMMENDS that the Motion for Summary Judgment be GRANTED on Plaintiff's First Amendment claims against Defendants Terhune and Galaza and the case be DISMISSED.[2]

The Court orders that these Findings and Recommendations be submitted to the United States District Court Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within THIRTY (30) DAYS after being served with a copy of the Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the Objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   April 28, 2006                     /s/ Sandra M. Snyder
icido3                                 UNITED STATES MAGISTRATE JUDGE

---

[2] An Order Adopting these Findings and Recommendations would resolve the case in its entirety.